UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANITA BRADLEY, *et al.*,

      Plaintiffs,

v.

      Case No. 19-cv-12396
      Hon. Matthew F. Leitman

FOUNTAIN BLEU HEALTH
AND REHABILITATION CENTER, INC.,

      Defendants

_____/

## ORDER DENYING PLAINTIFFS' RENEWED MOTION TO VACATE ARBITRATION AWARD (ECF No. 23)

In 2019, Plaintiffs Shanita Bradley, Erica Chappell, Angela Hamm, and Barbara Kemp (collectively "Plaintiffs") filed their Complaint in this civil action against their former employer, Fountain Bleu Health and Rehabilitation Center, Inc. ("Fountain Bleu"). They asserted claims under federal and Michigan anti-discrimination laws. Plaintiffs later stipulated to the entry of an order requiring them to arbitrate their claims, but they then waited eight months to commence arbitration proceedings against Fountain Bleu. The Arbitrator thereafter dismissed all of Plaintiffs' claims as time-barred.

Plaintiffs have now filed a motion to vacate the Arbitrator's ruling. (*See* Renewed Mot. to Vacate, ECF No. 23.) They argue that the Arbitrator manifestly

1

disregarded the law and that Fountain Bleu used undue means to secure the Arbitrator's ruling in its favor.  For the reasons explained below, the Court **DENIES** Plaintiffs' motion to vacate the Arbitrator's decision.

## I

## A

Plaintiffs are former employees of Fountain Bleu.  In connection with their employment, each Plaintiff executed an agreement to arbitrate claims against Fountain Bleu (the "Arbitration Agreement").  The Arbitration Agreement obligated each Plaintiff to arbitrate "[a]ll claims […] in any way arising from or related to [her] employment relationship with [Fountain Bleu]." (Arb. Agreement, ECF No. 7-1, PageID.59.)  The Arbitration Agreement also included a provision that required each Plaintiff to commence "any action or legal proceeding relating to [her] employment or termination of employment" within "6 months of the event complained of" (the "6-Month Contractual Limitations Period").  (*Id.*)   In whole, the Arbitration Agreement provided as follows:

> All claims arising from the provisions of this agreement or in any way arising from or related to the employee's employment relationship with FOUNTAIN BLEU NURSING & REHABILITATION CENTER shall be arbitrated in Wayne County, Michigan using the procedures and policies of the American Arbitration Association. The sole and exclusive venue for the arbitration shall be Wayne County, Michigan. The parties agree that the determination of the arbitrator shall be exclusive, binding and final upon all parties. The award of

the arbitrator may be filed with the clerk of any court of competent jurisdiction and judgment may be rendered by the court upon the arbitration award, and execution may be issued upon the judgment. The cost of the arbitration shall be paid by the Employer. Where applicable, the arbitrator shall have no power to change, modify or otherwise alter the "at-will" nature of the employment relationship, and the arbitrator shall issue a written determination based solely upon such "at-will" relationship.

The employee further agrees not to commence any action or legal proceeding relating to employee's employment or termination of employment more than 6 months after the event complained of unless a shorter period is established by law, and agrees to waive any statute of limitations to the contrary.

(*Id.*)

## B

On January 8, 2019, Fountain Bleu terminated the employment of Bradley, Chappell, and Hamm. (*See* Resp., ECF No. 18, PageID.285.)   Fountain Bleu terminated Kemp's employment on February 1, 2019. (*See id.*)   On February 15, 2019, all of the Plaintiffs filed a charge of discrimination with the EEOC as required by Title VII of the Civil Rights Act of 1964 ("Title VII"). (*See id.*)  Bradley, Hamm, and Chappell filed a charge alleging discrimination on the basis of their "(1) sex/gender, (2) race, and (3) [Fountain Bleu's] retaliation against [them]." (Compl. at ¶¶ 53–55, ECF No. 1, PageID.8.)  Kemp's charge alleged discrimination "on the basis of her (1) age and (2) race." (*Id.* at ¶ 56, PageID.8.)

On May 15, 2019, Hamm received a right to sue letter from the EEOC. (*See* Resp., ECF No. 18, PageID.292.)  On June 12, 2019, Bradley, Kemp, and Chappell likewise received right to sue letters from the EEOC. (*See id.*)  Under federal law, Plaintiffs had 90 days from receipt of their right to sue letters to bring their federal claims (the "Federal 90-Day Limitations Period"). *See* 42 U.S.C. § 2000e-5(f)(1) (setting 90-day period for Title VII claims); *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 521 (6th Cir. 2021) (explaining that Federal 90-Day Limitations Period applies to claims under the Age Discrimination in Employment Act (the "ADEA")).

## C

Plaintiffs filed suit against Fountain Bleu in this Court on August 13, 2019 – 90 days after Hamm received her right to sue letter, and 62 days after Bradley, Kemp, and Chappell received their letters. (*See* Compl., ECF No. 1.)  Plaintiffs' Complaint alleged that Fountain Bleu: (1) discriminated against all Plaintiffs on the basis of their race in violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA"); (2) discriminated against Kemp on the basis of her age, in violation of the ADEA; (3) discriminated against all Plaintiffs on the basis of age, in violation of the ELCRA; (4) discriminated against Bradley, Chappell, and Hamm on the basis of their sex/gender, in violation of Title VII and the ELCRA; (5) retaliated against Bradley, Chappell, and Hamm in violation of Title VII; (6) retaliated against all Plaintiffs in violation of the ELCRA; (7) created a hostile work environment for all

Plaintiffs in violation of Title VII and the ELCRA; and (8) wrongfully discharged all Plaintiffs in violation of Michigan public policy. (*See id.*, PageID.8–23.)  Instead of filing an Answer to the Complaint, Fountain Bleu moved to dismiss the Complaint and to compel arbitration pursuant to the Arbitration Agreement. (*See* Mot. to Dismiss, ECF No. 7.)

After Fountain Bleu filed its motion, the parties discussed a possible stipulation to compel arbitration.  As part of those communications, on November 20, 2019, counsel for Fountain Bleu emailed counsel for Plaintiffs a proposed stipulated order compelling Plaintiffs to bring their claims in arbitration and dismissing Plaintiffs' Complaint with prejudice. (*See* ECF No. 17-3, PageID.255.) On December 4, 2019, Plaintiffs' counsel responded that Plaintiffs were "ok with this stipulation, as long as we are in agreement that [Fountain Bleu would] not rais[e] the [6-Month Contractual Limitations Period] as a defense to void the arbitration once we proceed there." (*Id.*)  Fountain Bleu's counsel replied that:

> All causes of action in the Complaint under [ELCRA] are barred by the abbreviated statute of limitations.  As a result, we will be raising the defense in relationship to any state law claims you attempt to include in the arbitration demand.

(*Id.*, PageID.254.)  Plaintiffs' counsel responded: "Ok, we will deal with that issue. You can submit the stipulation to the court." (*Id.*)  Fountain Bleu's counsel then presented the stipulation to the Court.

5

On December 5, 2019, the Court entered the stipulated order compelling arbitration (the "Stipulated Arbitration Order"). (Stip. Arb. Order, ECF No. 8.)  That order stated as follows:

> IT IS HEREBY ORDERED that Plaintiffs' Complaint and all claims belonging to Plaintiffs be submitted to irrevocable, final and binding arbitration based on Plaintiffs' execution of the Separate Acknowledgement of Arbitration of Disputes and Limitations of Claims to 6 Months, which mandates arbitration of all employment related claims, including the claims alleged in Plaintiffs' Complaint.
>
> IT IS FURTHER ORDERED that the Complaint is dismissed with prejudice and without recovery of costs or fees by either party, except for this Court retaining jurisdiction for the purpose of confirmation or enforcement of any arbitration award.

(*Id.*, PageID.79–80.)

## D

Plaintiffs did not immediately commence arbitration proceedings after the Court entered the Stipulated Arbitration Order.  Instead, on April 30, 2020 – nearly five months after the Court entered the Stipulated Arbitration Order – Plaintiffs returned to this Court and filed a motion to set aside that order. (*See* Mot. to Set Aside, ECF No. 10.)  Plaintiffs argued that the Court should set aside the Stipulated Arbitration Order under Federal Rules of Civil Procedure 60(b)(3) and (6) because Fountain Bleu breached the order by failing "to select an arbitrator or discuss the

mechanisms of the [arbitration] process." (*Id.*, PageID.93.)  The Court denied the motion on May 14, 2020. (*See* Order, ECF No. 13.)

On May 27, 2020, Plaintiffs filed a renewed motion to set aside the Stipulated Arbitration Order. (*See* Renewed Mot. to Set Aside, ECF No. 14.)  In the renewed motion, Plaintiffs argued again that the Court should set aside the Stipulated Arbitration Order under Federal Rule of Civil Procedure 60(b)(6) because (1) Fountain Bleu had not cooperated in initiating arbitration proceedings, and (2) the Court had to determine whether the parties' Arbitration Agreements were validly formed before compelling the parties to arbitrate their dispute. (*See id.*)

The Court rejected both of Plaintiffs' arguments and denied the renewed motion on June 24, 2020. (*See* Order, ECF No. 16.)  It explained that (1) Plaintiffs "did not need any cooperation from Fountain Bleu to initiate arbitration proceedings" under the operative American Arbitration Association rules; and (2) Plaintiffs *stipulated* to arbitration, thus eliminating any need for the Court to determine whether the parties' Arbitration Agreements were validly formed. (*Id.*, PageID.185–186.)

Finally, on August 8, 2020, Plaintiffs filed an arbitration demand. (*See* Dismissal Order, ECF No. 17-4, PageID.260.)  This was nearly eighteen months after Fountain Bleu terminated their employment, more than twelve months after they received their right to sue letters from the EEOC, and more than eight months

after this Court entered the Stipulated Arbitration Order in which it dismissed Plaintiffs' Complaint and compelled the parties to arbitrate their dispute.

<strong>E</strong>

On November 2, 2020, Fountain Bleu filed a motion before the Arbitrator in which it sought dismissal of Plaintiffs' claims. (*See* Arb. Mot. to Dismiss, ECF No. 17-2.)  In that motion, Fountain Bleu first argued that all of Plaintiffs' claims (both federal and state) were barred by the 6-Month Contractual Limitations Period. (*See id.*, PageID.216.)  Fountain Bleu also argued that Plaintiffs' federal claims failed for the additional and independent reason that Plaintiffs did not demand arbitration within 90 days as required by the Federal 90-Day Limitations Period. (*See id.*)

Plaintiffs opposed the motion to dismiss. (*See* Arb. Resp., ECF No. 17-3.) They argued that: (1) under Sixth Circuit precedent, Title VII claims are not subject to the 6-Month Contractual Limitations Period; (2) at any rate, their claims were timely under that period because Plaintiffs filed their Complaint in this Court less than six months after their termination; (3) their federal claims were timely under the Federal 90-Day Limitations Period because they filed their Complaint in this Court within 90 days of receiving their right to sue letters; and, finally (4) Fountain Bleu waived any timeliness arguments pertaining to their (Plaintiffs') federal claims. (*See id.*)

8

On February 8, 2021, the Arbitrator entered an order granting Fountain Bleu's motion to dismiss and dismissing all of Plaintiffs' Claims (the "Dismissal Order"). (*See* Dismissal Order, ECF No. 17-4.)  The Arbitrator agreed with Fountain Bleu that none of Plaintiffs' claims were timely. (*See id.*)  The Arbitrator concluded that Plaintiffs' state-law claims were untimely because Plaintiffs did not demand arbitration of the claims within six months of the alleged discrimination, as required by the 6-Month Contractual Limitations Period. (*See id*.)  But the Arbitrator did not make clear the basis on which she found Plaintiffs' federal claims to be untimely. More specifically, she did not specify whether she was dismissing Plaintiffs' federal claims as untimely under the 6-Month Contractual Limitations Period, under the Federal 90-Day Limitations Period, or both.  The Arbitrator wrote:

> The gravamen of Respondent's Motion to Dismiss is based on the assertion that Claimants did not file their arbitration Demand within the required six month period set forth in their employment agreement. The underlying chronology and timing of events is mostly not in dispute among the parties. Their disagreement lies in their respective interpretations of Title VII and the events that preceded the filing of the Demand. Claimants rely on case law to suggest that their rights under Title VII would be denied if the contractual provisions override the statutory time requirements.

> Claimants Bradley, Chapel and Hamm were terminated on January 8, 2019.  Claimant Kemp was terminated on February 1, 2019.  All four Claimants filed individual charges with the 2 EEOC on February 15, 2019. On May 15, 2019 the EEOC issued a "right to sue" letter to Kemp. The other three Claimants received their letters on June 12,

2019. The four Claimants then filed a single lawsuit in the United States District Court for the Eastern District of Michigan on August 8, 2019.  By Stipulation, that action was dismissed on December 5, 2019. They then again exercised their rights in filing a Demand on August 8, 2020.

Irrespective of whether there is contractual or statutory tolling of the six months while Claimants pursued the required EEOC action, and then the USDC action, they did not file within the proper timeline after dismissal of the USDC case. Looking at events in the light most favorable to Claimants, even if tacking of the aggregate number of days is not measured, Claimants failed to timely meet their deadline.   Claimants' case is dismissed in full with prejudice.

(*Id.*, PageID.260–261.[1])

## F

On May 7, 2021, Plaintiffs filed a motion requesting that the Court vacate the Dismissal Order (the "First Motion to Vacate"). (*See* First Mot. to Vacate, ECF No. 17.)  In this motion, Plaintiffs asserted two grounds for relief: (1) that Fountain Bleu used "undue means" to persuade the Arbitrator that their federal claims were not filed within the Federal 90-Day Limitations Period, (*id.*, PageID.199–201); and (2) that the Arbitrator "manifestly disregarded" the relevant law by improperly dismissing Plaintiffs' federal claims as time-barred under Contractual Limitations

---

[1] As required by the American Arbitration Association's Employment Arbitration Rule 39(c), the Arbitrator provided reasons for the dismissal.

Period. (*Id.*, PageID.201–203).  Fountain Bleu opposed the motion.  The Court heard oral argument on October 28, 2021.

After reviewing the parties' arguments, the Court rejected Plaintiffs' contention that they were entitled to relief from the Dismissal Order on their "undue means" theory.   The Court next concluded that the Dismissal Order was not sufficiently clear as to whether the Arbitrator dismissed Plaintiffs' federal claims under the Federal 90-Day Limitations Period, the 6-Month Contractual Limitations Period, or both.  This ambiguity precluded the Court from determining whether Plaintiffs were entitled to relief from the Dismissal Order on their "manifest disregard for the law" theory.  Accordingly, the Court issued an order in which it remanded the case back to the Arbitrator for clarification (the "Remand Order"). (*See* Remand Order, ECF No. 21.)  Addressing each of Plaintiffs' asserted bases for relief in turn, the Court explained its reasoning as follows:

> Plaintiffs assert two grounds for relief from the Dismissal Order. First, Plaintiffs contend that Fountain Bleu used "undue means" to persuade the Arbitrator that their federal claims were not filed within the Federal 90-Day Limitations Period. [] More specifically, Plaintiffs contend that Fountain Bleu (1) misled Plaintiffs into believing that Fountain Bleu would no 14 assert the Federal 90-Day Limitations Period as a defense to Plaintiffs' federal claims in the arbitration and (2) withheld from Plaintiffs a legible copy of the Arbitration Agreement until the Federal 90-Day Limitations Period had expired. []
>
> As the Court expressed during the hearing on Plaintiffs' motion, this line of attack on the Dismissal Order suffers

from several potential flaws, including, but not limited to the fact that Fountain Bleu never promised to withhold a defense under the Federal 90-Day Limitations Period in the arbitration, and that Plaintiffs had a legible copy of the Arbitration Agreement more than 90 days before they filed their demand for arbitration.[] Simply put, if the Arbitrator dismissed Plaintiffs' federal claims as time-barred under the Federal 90-Day Limitations Period, it would appear that Plaintiffs would have a very difficult time showing that they are entitled to relief from that ruling.

Second, Plaintiffs argue that the Arbitrator "manifestly disregarded" the relevant law by improperly dismissing Plaintiffs' federal claims as time-barred under Contractual Limitations Period. [] Plaintiffs assert that "an arbitration agreement cannot shorten a plaintiff's right to pursue claims under Title VII," and they therefore insist that their federal claims could not be time-barred under the Contractual Limitations Period. [] There may be something to this line of argument. Thus, if the Arbitrator ruled that Plaintiffs' federal claims were time-barred because they were not filed within the Contractual Limitations Period, it may be possible for Plaintiffs to establish a "manifest disregard for the law" and to obtain relief from the portion of the Dismissal Order that dismissed their federal claims.

The Court cannot determine whether Plaintiffs are entitled to relief from the portion of the Dismissal Order dismissing their federal claims because the Arbitrator did not make clear whether she was dismissing the claims as time-barred under the Contractual Limitations Period, under the Federal 90-Day Limitations Period, or both. The operative portion of the Dismissal Order states only that:

> Irrespective of whether there is contractual or statutory tolling of the six months while Claimants pursued the required EEOC action, and then the USDC action, they did not file within the proper timeline after dismissal of the USDC case. Looking at

> events in the light most favorable to
> Claimants, even if tacking of the aggregate
> number of days is not measured, Claimants
> failed to timely meet their deadline. (See
> Dismissal Order, ECF No. 17-4, Page
> ID.261.) These two sentences do not specify
> which of the two limitation periods at play
> provided the "proper timeline" under which
> Plaintiffs failed to file their federal claims.

> [] The Court concludes that a remand to the Arbitrator for
> clarification is appropriate. […]

> On remand, the Arbitrator shall clarify whether she
> dismissed Plaintiffs' federal claims as untimely under the
> Federal 90-Day Limitations Period, under the Contractual
> Limitations Period, or under both. Resolution of that issue
> will permit the Court to determine whether Plaintiffs are
> entitled to relief from any portion of the Dismissal Order.

(*Id.*, PageID.324–327 (internal citations and footnotes omitted).)

## G

In response to the Court's Remand Order, the Arbitrator issued a new

dismissal order in which she clarified the basis of her decision (the "Clarified

Dismissal Order"). (*See* Clarified Dismissal Order, ECF No. 23-5.)  The Arbitrator

explained the bases for her conclusion that Plaintiffs' federal claims were time-

barred as follows:

> [Plaintiffs'] federal action was barred from pursuit in the
> court system by their own contractual forum commitments
> to arbitrate their claims. In recognition of this obligation,
> [Plaintiffs] and [Fountain Bleu] stipulated to dismissal
> with prejudice of their federal case by an Order dated
> December 5, 2019 and it appeared [Plaintiffs] were going
> to proceed to arbitration.

13

In a light most favorable to [Plaintiffs], they proceeded as though they had no six-month statutory or contractual time limit to pursue their claims after the Stipulated Order of December 5, 2019. As a result, [Fountain Bleu's] Motion to Dismiss asserted two arguments in its favor, one grounded in the law of Title VII and one based upon the contractual agreements. As requested by the Court, and as further explained below, the contractual limitations period as applied by the Arbitrator was interpreted to give [Plaintiffs] the fullest amount of time to pursue their claims and they failed to follow their own commitments.

As the Court noted in [Remand Order], [Fountain Bleu] asserted that per 29 CFR 1601.28(e) [Plaintiffs] were required to start suit within 90 days of the EEOC right to sue letters. In a light most favorable to them, this would mean filing a cause of action on or before August 2019 (Kemp) and September 2019 (the other three [Plaintiffs]). [Plaintiffs] did file the federal action within the 90 days of receiving the right to sue letters but then they dismissed the case and did not proceed to file arbitration within the next 90 days after the stipulated dismissal as required by Title VII. If an equitable tolling remedy is applied due to the wrongful filing of the cause of action in federal court, the statutory 90 days for filing began on December 5, 2019 when the Stipulated Order for Dismissal was entered and then expired on March 4, 2020. [Plaintiffs] did not pursue their arbitration claims until August of 2020. By law, they failed to meet their statutory filing timelines. Thus, their claims were time barred not by contract but by federal law.

[Fountain Bleu's] second argument for dismissal was based in contract. Respondent asserted that [Plaintiffs] only had six months from termination to pursue claims in any forum […] As expressed above, the Arbitrator did not need to rely on this argument for purposes of dismissing [Plaintiffs'] claims. However, because Respondent raised the issue, it was addressed.

Following the <u>Clark</u> and <u>Logan</u> decisions, application of the six-month contractual time limit could begin at the

14

earliest, after completion of the Title VII opportunities and requirements, i.e., when the right to sue letters arrived. However, the Arbitrator also looked at the best possible outcome for [Plaintiffs] due to the wrongful federal filing. Following this rationale, the contractual time line commenced at the latest, on December 5, 2019. This means [Plaintiffs] would have had to file arbitration on or before June 2, 2020. Again, they did not meet this time restriction either.

Following <u>Logan</u>, one can ignore the six-month contractual provision and still find in [Fountain Bleu's] favor due to the delay in [Plaintiffs'] filing for arbitration in the first instance after the issuance of the right to sue letters and then again after entry of their Stipulated Order of Dismissal. They met neither the six-month contractual provision nor the 90-day provision under federal law. Unlike Mr. Logan, these [Plaintiffs] were able to and did exercise their full Title VII rights and were not denied those rights. They did not proceed to arbitration within 90 days of their right to sue letters (August--September 2019), nor within 90 days of the dismissal of the federal case (42 USC 2000e-5) which would be circa March 2020. Further, they didn't follow their contractual obligation to file arbitration within their six-month contractual time period, which, at the latest, would be circa June 2020. This is true even giving [Plaintiffs] the benefit of the doubt and applying the tolling of a time line while they were improperly in the federal court system after receiving their EEOC right to sue letters.

(*Id.*, PageID.531–532.)

Simply put, the Arbitrator concluded that (1) the Federal 90-Day Limitations Period applied to Plaintiffs' federal claims; (2) under that period and in light of the Arbitration Agreement, Plaintiffs had 90 days to demand arbitration following their receipt of the right to sue letters; (3) Plaintiffs did not demand arbitration within that

time period; (4) even if, assuming *arguendo* (and giving Plaintiffs' every possible benefit of the doubt), the 90-day period did not begin to run until this Court entered the Stipulated Arbitration Order, Plaintiffs' federal claims were still untimely because Plaintiffs did not demand arbitration until more than 90 days after entry of that order; and therefore (5) Plaintiffs' federal claims were time-barred.

From this point forward, the Court will refer to the Arbitrator's disposition of the case, as issued first in the Dismissal Order and then clarified subsequently in the Clarified Dismissal Order, as the "Award."

### H

On January 7, 2022, Plaintiffs filed the instant renewed motion to vacate the Award. (*See* Renewed Mot. to Vacate, ECF No. 23.)  The Court will detail their arguments in greater detail below, but, in short, Plaintiffs contend that the Award should be vacated because (1) it was issued in manifest disregard for the law; and/or (2) Fountain Bleu procured the Award through undue means. (*See id.*, PageID.461–469.)  Plaintiffs also assert that the Court should vacate the Stipulated Arbitration Order under Federal Rule of Civil Procedure 60(b)(1). (*See id.*, PageID.469–471.) Fountain Bleu filed its opposition on January 21, 2022 (*see* Resp., ECF No. 24); Plaintiffs filed a reply on January 28, 2022 (*see* Reply, ECF No. 25.).  The Court determined that it could resolve the motion without a hearing. (*See* Notice, ECF No. 26.)

## II

### A

The Court begins with the portion of Plaintiffs' motion in which they ask the Court to vacate the Award under the Federal Arbitration Act (the "FAA"), 9 U.S.C. 1, *et. seq.* (*See* Renewed Mot. to Vacate, ECF No. 23, PageID.461–469.)  The FAA requires the Court to apply "one of the narrowest standards of judicial review in all of American jurisprudence." *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016).  Indeed, "[c]onvincing a federal court to vacate an arbitral award is a herculean task." *Warfield v. Icon Advisers, Inc.*, --- F.4th ---, 2022 WL 552029, at *2 (4th Cir. Feb. 24, 2022).

The FAA enumerates four limited grounds upon which a court can vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

17

9 U.S.C. § 10(a).

The United States Court of Appeals for the Sixth Circuit has also recognized an additional ground upon which an arbitration award may be vacated: "where the arbitration award was made 'in manifest disregard of the law.'"[2] *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).  This is "a very narrow standard of review." *Id*.  Under this standard:

> A mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent. When faced with questions of law, an arbitration panel does not act in manifest disregard of the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle.

*Id.* (internal citations omitted).  "To demonstrate that the disputed legal principle is clearly defined and is not subject to reasonable debate," the party seeking to vacate

---

[2] The Sixth Circuit has noted that the Supreme Court's decision in *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008), raises a possible question about the continuing validity of the manifest disregard standard as a basis for vacating an arbitrator's award under the FAA. *See Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016) ("Whether 'manifest disregard of the law' may still supply a basis for vacating an arbitrator's award as 'a judicially created supplement to the enumerated forms of FAA relief' after *Hall Street* is an open question.").  However, the Sixth Circuit has not yet discarded that standard, and that court continues to apply it in unpublished decisions. *See, e.g., Gibbens v. OptumRx, Inc.*, 778 F. App'x 390, 393–94 (6th Cir. 2019).  Unless and until the Sixth Circuit rejects its prior published decisions recognizing the validity of the manifest disregard standard, this Court will continue to apply that standard.

an arbitration award must identify "binding precedent requiring a contrary result." *Warfield,* --- F.4th ---, 2022 WL 552029, at *3 (quotation omitted).

## B

As explained above, the Arbitrator dismissed Plaintiffs' state-law and federal claims for different reasons.  She concluded that Plaintiffs' federal claims were time-barred under the Federal 90-Day Limitations Period and that Plaintiffs' state-law claims were time-barred under the 6-Month Contractual Limitations Period.  The Court addresses each basis for dismissal separately and, for the reasons explained below, it concludes that Plaintiffs are not entitled to relief from the dismissal of either their federal or state claims.

## C

Plaintiffs argue that they are entitled to relief from the Arbitrator's dismissal of their federal claims for two reasons: (1) the Arbitrator manifestly disregarded the law by dismissing their federal claims under the Federal 90-Day Limitations Period; and (2) Fountain Bleu used "undue means" to persuade the Arbitrator that their federal claims were not filed within the Federal 90-Day Limitations Period. (*See* Renewed Mot., ECF No. 23, PageID.461–469.)  The Court disagrees.

## 1

The Court begins with Plaintiffs' contention that the Arbitrator erred when she dismissed their federal claims under the Federal 90-Day Limitations Period.

19

Plaintiffs argue that the Arbitrator manifestly disregarded the law in two respects. First, they contend that the Federal 90-Day Limitations Period does not apply to claims that must be filed in arbitration, like the federal claims they are pursuing against Fountain Bleu, and thus the Arbitrator's dismissal of their claims under that period is manifestly contrary to the law. (*See* Renewed Mot. to Vacate, ECF No. 23, PageID.462.)  Second, they argue that if the Federal 90-Day Limitations Period does apply to their claims, they satisfied that period by filing this civil action within 90 days of receiving their right to sue letters. (*See id.*)  They insist that since their filing of this civil action satisfied the limitations period, the time at which they demanded arbitration – and whether that time is more than 90 days later than their receipt of the right to sue letters – is immaterial to whether their claims are timely.  They argue that the Arbitrator thus manifestly disregarded the law by measuring the timeliness of their claim against the date on which the demanded arbitration.   The Court declines to disturb the Award for either of these two reasons.

**a**

Plaintiff's contention that the Federal 90-Day Limitations Period applies only to the filing of an action in a court and does not apply to claims that must be brought arbitration is a reasonable one, but the Arbitrator's ruling to the contrary did not amount to a manifest disregard of the law.

20

Plaintiffs' view of the limitations period finds some support in the relevant statutory language. The provision containing the Federal 90-Day Limitations Period, 42 U.S.C. § 2000e-5(f)(1), states as follows:

> [W]ithin ninety days after [receipt of a right to sue letter] *a civil action* may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as *the court* may deem just, *the court* may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, *the court* may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, *the court* may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

42 U.S.C. 2000e-5(f)(1) (emphases added). As highlighted above, this section provides that an aggrieved person may file "a civil action" in which he asserts his Title VII claim within 90 days of receiving his right to sue letter. "Civil action" is not defined in the statute; nonetheless, the excerpted section above refers in several instances to "the court" in which such an action is brought. Nowhere does this section mention "arbitration." Thus, this section could be read to suggest that the

Federal 90-Day Limitations Period applies only to actions brought in a court, and not to actions that must be brought in arbitration.

But Plaintiffs have not established that this is the only permissible reading of the statute, as they must do in order to demonstrate that the Arbitrator's decision to apply the Federal 90-Day Limitations Period amounted to a manifest disregard of the law. Notably, Plaintiffs have not cited any binding authority stating that the Federal 90-Day Limitations Period is limited to civil actions filed in federal district courts and has no application to claims that must be submitted to arbitration. And there is authority suggesting that this is perhaps an open question. *See Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 F. App'x 19, 23 (2d Cir. 2016) (noting that "it is not clear" whether the Federal 90-Day Limitations Period applies to claims that must be brought in arbitration). Under these circumstances, Plaintiffs have not carried their burden of establishing that the Arbitrator's decision on this issue is "not subject to reasonable debate" and "fl[ies] in the face of clearly established legal precedent." *Jaros*, 70 F.3d at 421.

Moreover, there is some authority that suggests that, given the language in the Arbitration Agreement, the Arbitrator did not manifestly disregard the law when she concluded that Plaintiffs' claims were subject to the Federal 90-Day Limitations Period even though the claims were subject to mandatory arbitration. The relevant language in the Arbitration Agreement provides that "[t]he employee further agrees

not to commence any action or legal proceeding relating to employee's employment or termination of employment more than 6 months after the event complained of *unless a shorter period is established by law*[.]" (Arb. Agreement, ECF No. 7-1, PageID.59 (emphasis added).)   When presented with arbitration agreements containing similar language, other courts have concluded that an arbitrator did not manifestly disregard the law by ruling that those contracts (1) incorporated the Federal 90-Day Limitations Period and (2) rendered that period applicable to claims that must be brought in arbitration.  For example, in *Hagan v. Katz Commc'ns, Inc.*, 200 F. Supp. 3d 435, 439–40 (S.D.N.Y. 2016), as here, the plaintiff (1) filed a lawsuit asserting Title VII claims within 90 days of receipt of his right to sue letter, (2) later stipulated to arbitration pursuant to a mandatory arbitration agreement, and then (3) submitted his arbitration demand well after the Federal 90-Day Limitations Period had elapsed.  The arbitrator dismissed his claims as barred by the Federal 90-Day Limitations Period. *Id.* at 440–41.  The arbitrator noted first that the parties' arbitration agreement "required claims to 'be received within the applicable/relevant statute of limitations period.'" *Id.* at 440.  The arbitrator concluded that this provision required plaintiff to bring his Title VII claims in arbitration within 90 days of his right to sue letter under the Federal 90-Day Limitations Period – which the *Hagan* plaintiff had failed to do. *See id.*

The plaintiff later sought to vacate the award under the manifest disregard standard. *Id.* at 444.   Much like Plaintiffs here, the *Hagan* plaintiff accused the arbitrator of "simply creat[ing]" the Federal 90-Day Limitations Period. *See id.* (internal quotation marks omitted).   The court disagreed.   It first noted that plaintiff failed to provide "well defined, explicit, and clearly applicable" precedent foreclosing the application of the Federal 90-Day Limitations Period under the parties' arbitration agreement. *Id.*   The court further explained that the arbitrator's application of the Federal 90-Day Limitations Period was rooted in the arbitration agreement because "the [a]rbitrator found that the ninety-day limitations period was mandated by the Employment Agreement." *Id.*   The court held that under those circumstances, "[t]he [a]rbitrator's decision to impose" the Federal 90-Day Limitations Period "was clearly construing the" arbitration agreement "and thus did not disregard well defined, explicit, and clearly applicable federal law." *Id.* (internal quotation marks omitted).   *Hagan* thus holds that where an arbitration provision in an employment contract contains language incorporating applicable statutory limitations periods – as the parties' Arbitration Agreement does here – it is not a manifest disregard of the law to apply the Federal 90-Day Limitations Period in the arbitration process. *See also Anthony v. Affiliated Computer Servs., Inc.*, 621 F. App'x. 49, 51–52 (2d Cir.2015) (holding that arbitrator did not manifestly disregard the law by applying Federal 90-Day Limitations Period where arbitration agreement

incorporated that Period for claims under the ADEA).   In this regard, *Hagan*

undercuts Plaintiffs' position here that the Arbitrator's decision to apply the Federal

90-Day Limitations Period amounted to a manifest disregard of the law.

Finally, and critically, Plaintiffs concede that whether the Federal 90-Day

Limitations Period applies to claims subject to mandatory arbitration may be "a

matter of first impression in this Court[.]" (*See* Reply, ECF No. 25, PageID.596.)

This concession underscores that the Arbitrator's decision to apply the period did

not constitute a manifest disregard for the law.  Such a disregard exists only where

"the applicable legal principle is clearly defined," *see Jaros*, 70 F.3d at 421, and,

almost by definition, that circumstance cannot exist with respect to a matter of first

impression. *See Jaros*, 70 F.3d at 421 (holding that an arbitral "decision must fly in

the face of *clearly established legal precedent*" to constitute manifest disregard);

*Warfield*, --- F.4th ---, 2022 WL 552029, at *3 (explaining that a legal principle is

clearly defined only if it is reflected in binding precedent).

For all of these reasons, Plaintiffs have failed to establish that the Arbitrator's

decision to apply the Federal 90-Day Limitations Period to Plaintiffs' claims

constituted a manifest disregarded of the law.

**b**

Next, the Arbitrator did not manifestly disregard the law when she rejected

Plaintiffs' argument that they satisfied the Federal 90-Day Limitations Period by

filing their Complaint in this Court (rather than in arbitration) within 90 days of receiving their right to sue letters. Plaintiffs have not cited any binding authority holding that a plaintiff satisfies the Federal 90-Day Limitations Period with respect to a claim that is subject to mandatory arbitration (as their claims are) by filing the claim in a civil action in federal district court. And Plaintiffs' suggestion that they did satisfy the Federal 90-Day Limitations Period by filing their claims in this Court – rather than in arbitration as the Arbitration Agreement required them do – appears to be in at least some tension with the recognition by some courts that filing a federal employment discrimination claim in the wrong forum does not satisfy or toll the Federal 90-Day Limitations Period. *See, e.g., Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993) (explaining that "[i]n instances where a [Title VII] complaint is timely filed and later dismissed [for improper venue], the timely filing of the complaint does not 'toll' or suspend the [Federal] 90-[D]ay [L]imitations [P]eriod."); *Anagonye v. Mass Mut. Ins. Co.*, *Anagonye*, 2021 WL 2044437, at *3 (E.D. Mich. Apr. 9, 2021) (report and recommendation) (concluding that arbitration panel did not manifestly disregard the law where it dismissed federal discrimination claim as untimely under the Federal 90-Day Limitations Period even though plaintiff had initially filed the claim in district court within 90 days of receiving a right to sue letter), report and recommendation adopted, 2021 WL 2043008 (E.D. Mich. May 21, 2021).

Plaintiffs counter that an unpublished decision from the Northern District of Alabama clearly establishes that their filing of the Complaint in this Court satisfied the Federal 90-Day Limitations Period, and that the Arbitrator was therefore wrong to dismiss their claims on the ground that they did not timely demand arbitration. (*See* Ren. Mot. to Vacate, ECF No. 23, PageID.463 (citing *Jefferson v. Baptist Health Sys., Inc.*, 2018 WL 445738 (N.D. Ala. Feb. 2, 2017)).)   There are two problems with this argument.   First, an unpublished, out-of-circuit district court decision standing alone does not so clearly define a legal rule such that an arbitrator manifestly disregards the law by acting contrary to the rule. *See Jaros*, 70 F.3d at 421 (requiring "clearly established legal precedent" to establish manifest disregard); *Warfield,* --- F.4th ---, 2022 WL 552029, at *3 (holding a party challenging an arbitral award under manifest disregard must identify "binding precedent requiring a contrary result")*; Sanchez v. Elizondo*, 878 F.3d 1216, 1223 (9th Cir. 2018) (stating out-of-circuit cases are not authoritative precedent in the manifest disregard inquiry). Second, the court in *Jefferson* did not *hold* that the Federal 90-Day Limitations Period is satisfied with respect to a claim that is subject to mandatory arbitration where the plaintiff files the claim in a district court within 90 days of receiving a right to sue letter.   Instead, as discussed in more detail below, the court simply held that an arbitrator did not manifestly disregard the law by holding that the limitations period was tolled during the time that the plaintiff's claims were pending in federal

court. *See Jefferson*, 2018 WL 445738, at *6.  For these reasons, *Jefferson* does not establish that the Arbitrator manifestly disregarded the law by holding that Plaintiffs' federal claims were untimely under the Federal 90-Day Limitations Period even though Plaintiffs filed this action within 90 days of receiving their right to sue letters.

### c

Because Plaintiffs have not identified a clearly defined legal principle that the Arbitrator manifestly disregarded, the Court declines to vacate the Award under the manifest disregard standard.

### 2

The Court turns next to Plaintiffs' argument that they are entitled to relief under Section 10(a)(1) of the FAA on the ground that Fountain Bleu "procured the [Award dismissing Plaintiff's federal claims as untimely] through undue means." (Renewed Mot. to Vacate, ECF No. 23, PageID.465.)  Plaintiffs allege that these undue means included: (1) Fountain Bleu's failure to provide Plaintiffs with a legible copy of the Arbitration Agreement until after their claims were already untimely; and (2) Fountain Bleu's failure to tell Plaintiffs, when the parties were discussing whether to agree to the Stipulated Arbitration Order, that it (Fountain Bleu) intended to raise the Federal 90-Day Limitations Period in arbitration proceedings.  The Court is not persuaded that either of these allegedly "undue means" warrant vacating the Award.

First, the Court declines to vacate the Award based upon Plaintiffs' alleged lack of access to a legible copy of the Arbitration Agreement because the Arbitrator fully accounted for the claimed lack of access and did not hold it against Plaintiffs. Here's how.  The Arbitrator twice said that she was willing to assume for the sake of argument that the Federal 90-Day Limitations Period was tolled – and did not begin to run – until the Court entered the Stipulated Arbitration Award. (*See* Clarified Dismissal Order, ECF No. 23-5, PageID.531 ("If an equitable tolling remedy is applied due to the wrongful filing of the cause of action in federal court, the statutory 90 days for filing began on December 5, 2019 when the Stipulated Order for Dismissal was entered and then expired on March 4, 2020."); *id.* ("[G]iving [Plaintiffs] the benefit of the doubt and applying the tolling of a time line while they were improperly in the federal court system after receiving their EEOC right to sue letters.").)  As Plaintiffs admit, by that time, they had legible copies of the Arbitration Agreement. (*See* Ren. Mot. to Vacate, ECF No. 23, PageID.462.[3])  Thus, the Arbitrator was willing to assume that the Federal 90-Day Limitations Period did not begin to run until Plaintiffs had legible copies on the Arbitration Agreement (*i.e.*, December 2019, at the very latest).  By making that assumption –

---

[3] Indeed, Fountain Bleu had attached a legible copy of the Arbitration Agreement to its Motion to Dismiss and Compel Arbitration – which was filed nearly a month before this Court entered the Stipulated Order for Dismissal. (*See* Mot., Ex. A-1, ECF No. 7-1, PageID.59.)

and thereby effectively giving the Plaintiffs 90 days to demand arbitration from the point at which they admittedly had legible copies of the Arbitration Agreement – the Arbitrator ensured that Plaintiffs were not unfairly prejudiced by their claimed lack of access to legible copies of the Arbitration Agreements.  The claimed lack of legible copies thus provided no basis on which to vacate the Award.

Second, the Court declines to vacate the Award based upon the fact that Fountain Bleu did not inform Plaintiffs, before the parties stipulated to arbitrate their claims, that it would raise the Federal 90-Day Limitations Period as a defense in arbitration.  As the Court previously noted in the Remand Order, "Fountain Bleu never promised to withhold a defense under the Federal 90-Day Limitations Period in the arbitration[.]" (*See* Remand Order, ECF No. 21, PageID.325.)  Indeed, the record before the Court reveals that the parties never even addressed the Federal 90-Day Limitations Period before stipulating to arbitrate.  In a pre-stipulation e-mail exchange between counsel (which is set forth in relevant part above in Part (I)(C)), Plaintiffs' counsel sought an assurance from Fountain Bleu's counsel that Fountain Bleu would not raise the 6-Month Contractual Limitations Period in any arbitration. (*See* Ren. Mot. to Vacate, Ex. A, ECF No. 22-1, PageID.356.)  In response, Fountain Bleu's counsel said that Fountain Bleu would be raising that period as a defense to Plaintiffs' state-law claims. (*See id.*)  The exchange between counsel says nothing about the Federal 90-Day Limitations Period. (*See id.*)  The exchange thus cannot

reasonably be construed as containing a promise by Fountain Bleu not to assert the Federal 90-Day Limitations Period as a defense to Plaintiffs' federal claims. Moreover, Plaintiffs have identified no case law establishing that Fountain Bleu had a duty to affirmatively inform them, prior to the entry of the Stipulated Arbitration Order, that it (Fountain Bleu) intended to assert the Federal 90-Day Limitations Period as a defense in arbitration. For all of these reasons, the Court declines to vacate the Award on the ground that Fountain Bleu used undue means to trick Plaintiffs into believing that it (Fountain Bleu) would not assert the Federal 90-Day Limitations Period as a defense in arbitration.

Finally, the Court notes that Plaintiffs' reliance on *Jefferson* in support of their "undue means" argument is misplaced. The key facts, procedural posture, and holding of that case are inapposite. In *Jefferson*, the plaintiff, asserting Title VII claims, "filed suit [in federal court] within 90 days of the issuance of the right to sue letter," but "did not file a formal [arbitration] demand with AAA until" defendant moved to compel arbitration – "after the 90-day period had expired." *Jefferson*, 2017 WL 445738, at *5. Once in arbitration, defendant argued that Plaintiff's arbitration demand should be dismissed as untimely. *See id.*

The arbitrator rejected this argument for two reasons. First, the arbitrator concluded the parties' arbitration agreement "implie[d] that it [was] permissible to make a demand for arbitration outside the statutory limitations period," and therefore

plaintiff need not have complied with the Federal 90-Day Limitations Period. *Id.* at *6. Second, the arbitrator expressed concern that dismissing plaintiff's claims could promote gamesmanship by permitting a defendant to "wait until after the limitations period had run before filing a motion to compel arbitration and then wait until it had obtained [plaintiff's] consent to arbitrate and the court's referral of the civil action to arbitration before claiming that the arbitration was barred as untimely." *Id.* The arbitrator eventually entered an award in favor of the plaintiff. *Id.* at *3.

In the district court, the defendant moved to vacate the award under Section 10(a)(4) of the FAA on the ground that the arbitrator exceeded her authority when she, among other things, permitted plaintiff to proceed with his claims even though he filed them outside of the Federal 90-Day Limitations Period. The district court refused to vacate the arbitrator's award.

The court held that the arbitrator's first line of reasoning – that the parties' contract allowed the plaintiff to pursue his claim outside of the limitations period – "had an arguable basis that draws its essence from the contract." *Id.* The court therefore concluded that defendant "ha[d] not met its burden to prove that the arbitrator exceeded her authority when she allowed the arbitration to proceed[.]" *Id.* The court likewise declined to hold that the arbitrator's alternative reasoning – declining to dismiss based upon concerns about gamesmanship – provided a basis for vacatur. The court "join[ed] the arbitrator in her concern" regarding the potential

for "gaming the system and manipulation of the court." *Id.*  The court then held "[a]s an alternative ruling, based on these grounds" that defendant "ha[d] not met its burden to establish that the arbitrator exceeded her authority when she found that the arbitration's initiation was timely." *Id.*

*Jefferson* does not support Plaintiffs' "undue means" argument for several reasons.  First (and most obviously), the court in *Jefferson* did not address whether to vacate the arbitrator's award under the "undue means" prong of the FAA (9 U.S.C. § 10(a)(1)).  Instead, the court considered only whether the arbitrator exceeded her authority (under 9 U.S.C. § 10(a)(4)) when she determined that the defendant had inappropriately induced the plaintiff to agree to arbitrate.  Second, given the procedural posture of the case – *i.e.*, reviewing an arbitration award under the FAA's very deferential standard of review – the actual holding of the court is quite limited.  The court did not hold that the defendant committed misconduct or conducted itself inappropriately.  Instead, the court held only that the arbitrator did not exceed her authority when *she* reached that conclusion.

Finally, the concerns about gamesmanship that were present in *Jefferson* are absent here.  As described above, Fountain Bleu did not mislead Plaintiffs into believing that they could avoid the Federal 90-Day Limitations period in arbitration.  More importantly, the Arbitrator's analysis – which, as noted above, assumed that the limitations period did not start until the Court entered the Stipulated Arbitration

Award – gave the Plaintiffs a full 90 days to demand arbitration and thereby eliminated the impact of any statute-of-limitations gamesmanship that Fountain Bleu allegedly used to induce Plaintiffs to stipulate to arbitration.  For all of these reasons, *Jefferson* does not persuade the Court that it should vacate the Award on the ground that it was procured through undue means.

### D

The Court turns now to the Arbitrator's decision to dismiss Plaintiffs' state-law claims as time-barred by the 6-Month Contractual Limitations Period. Plaintiffs' renewed motion offers no argument specifically pertaining to how the Arbitrator manifestly disregarded the law when she dismissed the state-law claims as barred by that period.  However, giving Plaintiffs' motion the most generous construction reasonably possible, the Court understands Plaintiffs to argue that the Arbitrator erred by dismissing those claims because (1) the 6-Month Contractual Limitations Period does not explicitly require Plaintiffs to file *an arbitration demand* within the limitations period; (2) instead, the 6-Month Contractual Limitations Period only requires Plaintiffs to "commence any action or legal proceeding" within six months; and therefore (3) Plaintiffs' filing of this suit in federal court satisfied this Limitations Period.

The Court is not persuaded.  Under the manifest disregard standard, the Court cannot vacate an award on the ground that the arbitrator misinterpreted a contract so

long as the arbitrator "was even arguably construing or applying the contract." *Jacada (Eur.), Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 712 (6th Cir. 2005) (internal quotation marks and citation omitted), abrogated on other grounds by *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).  Here, the Court finds that the Arbitrator was construing the 6-Month Contractual Limitations Period when she concluded that that provision required Plaintiffs to file a demand for arbitration within six months of the Stipulated Arbitration Order. *See Hagan*, 200 F. Supp. 3d at 444 (refusing to vacate arbitral award dismissing claims as untimely where arbitrator was "clearly construing" the arbitration agreement to impose a limitations period on arbitration demands).  The Court cannot vacate the Award based upon Plaintiffs' contrary interpretation of the 6-Month Contractual Limitations Period.

Finally, Plaintiffs seem to suggest that the Arbitrator manifestly disregarded the law by applying the 6-Month Contractual Limitations Period to their state-law claims because the Michigan Supreme Court recently agreed to hear argument on whether Michigan public policy precludes enforcement of such a contractual provision to statutory employment discrimination claims. (*See* Reply, ECF No. 25, PageID.592 (citing *McMillon v. City of Kalamazoo*, 969 N.W.2d 10 (Mich. 2022) (requesting oral argument on application for leave to appeal)).)  The Michigan Supreme Court's action does not lend any support to Plaintiffs' attack on the Award. The question before this Court is whether the Arbitrator manifestly disregarded the

35

law as it existed *when the Arbitrator issued the Award*.  The Michigan Supreme Court's *subsequent* decision to potentially examine the enforceability of provisions like the 6-Month Contractual Limitations Period sheds no light on that question. Indeed, even "an intervening change of law, standing alone, [cannot] provide [...] grounds for vacating an otherwise proper arbitral award." *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 125 (2d Cir. 2011).

## E

The Court concludes that Plaintiffs have failed to establish any basis for vacatur of the Award under the FAA as it pertains to either their federal or state claims.  It therefore **DENIES** Plaintiff's renewed motion to vacate the Award.

## III

## A

The Court turns now to the portion of Plaintiffs' motion in which they request that the Court vacate the Stipulated Arbitration Order under Federal Rule of Civil Procedure 60(b)(1).  That Rule provides as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect [...]

Fed. R. Civ. Proc. 60(b)(1).  "[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Blue Diamond*

*Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (internal quotation marks omitted).  "The party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 454 (6th Cir. 2008).

## B

Plaintiffs contend that the Stipulated Arbitration Order should be vacated for three reasons: (1) Plaintiffs did not receive a legible copy of the Arbitration Agreement until November 2019; (2) Defendants were not cooperative in initiating arbitration; and (3) Plaintiffs did not realize that Defendants would assert a defense in arbitration based on the Federal 90-Day Limitations Period. (*See* Renewed Mot. to Vacate, ECF No. 22, PageID.351–352.)  Plaintiffs contend these three reasons constitute "mistake, inadvertence, surprise, or excusable neglect" under Rule 60(b)(1) and thus warrant vacatur.  The Court disagrees.

The Court already rejected the first two grounds when Plaintiffs advanced them in their prior motions to set aside the Stipulated Arbitration Order under Rule 60(b)(6). (*See* Mot. to Set Aside, ECF No. 10; Renewed Mot. to Set Aside, ECF No. 14.)  The Court explained its reasoning as follows:

> Plaintiffs' argument that Fountain Bleu has not cooperated in initiating the arbitration process does not provide a basis to set aside the Arbitration Stipulated Order. The Arbitration Stipulated Order compelled arbitration based

37

on Plaintiffs' execution of the Arbitration Agreements. (See Arbitration Stip. Order, ECF No. 8.) The Arbitration Agreements, in turn, provide that any arbitration should proceed "using the policies and procedures of the American Arbitration Association." (Arb. Agmt., ECF No. 7-1, PageID.59.) And the American Arbitration Association rules clearly explain that a claimant may initiate an arbitration by filing a demand and serving the demand on an opposing party. (See Rules, ECF No. 15-1.) Thus, Plaintiffs were on notice that they could begin an arbitration under the applicable rules by unilaterally making a demand. They did not need any cooperation from Fountain Bleu to initiative arbitration proceedings.

Plaintiffs counter that their copies of the Arbitration Agreements were not legible and that they did not understand what rules would apply to the arbitration. (See Mot. at ¶7, ECF No. 14, PageID.102.) But before Plaintiffs entered into the Arbitration Stipulated Order, Fountain Bleu filed with the Court (1) a blank, legible copy of the Arbitration Agreement, (2) copies of the Arbitration Agreements signed by each Plaintiff (which were not entirely legible), and (3) a sworn declaration from a Fountain Bleu employee in human resources who confirmed that the signed, partially illegible copies of the Arbitration Agreements matched the blank, legible copy placed in the record. (See ECF No. 7-1.) In addition, Fountain Bleu quoted the relevant provision of the Arbitration Agreement that referenced the American Arbitration Association and that organization's rules in its motion to dismiss. (See Mot. to Dismiss, ECF No. 7, PageID.43.) Thus, it should have been clear to Plaintiffs at the time that they agreed to the Arbitration Stipulated Order that they needed to initiate arbitration pursuant to the rules of the American Arbitration Association. Simply put, the Court is not persuaded that Plaintiffs needed any assistance from Fountain Bleu to initiate the arbitration proceedings, and Fountain Bleu's alleged lack of cooperation does not justify setting aside the Arbitration Stipulated Order.

(*See* Order, ECF No. 16, PageID.185–186.)

While Plaintiffs have repackaged these arguments under Rule 60(b)(1),[4] the Court concludes that the result is the same. Plaintiffs have provided no reasoning – let alone legal authority – for why a different result is required under Rule 60(b)(1). Accordingly, for the reasons outlined by the Court in its earlier order and for the reasons explained above in this Opinion and Order, the Court again concludes that these two bases – Defendants' purported lack of cooperation in initiating arbitration and Plaintiffs' alleged inability to obtain a legible copy of the Arbitration Agreements – do no justify setting aside the Stipulated Arbitration Order.

The Court is likewise not persuaded by Plaintiffs' third argument that Plaintiffs did not realize Defendants would assert the Federal 90-Day Limitations Period as a defense in arbitration. Plaintiffs have not cited any legal authority for the proposition that Rule 60(b)(1) permits vacatur where, as here, Plaintiffs allege Defendants failed to notify Plaintiffs of all possible defenses prior to the initiation of an arbitration proceeding. Moreover, as described above, Fountain Bleu did not mislead Plaintiffs into believing that Fountain Bleu would not assert the Federal 90-Day Limitations Period as a defense in arbitration. For these reasons, the Court

---

[4] Plaintiffs' prior motion to vacate the Stipulated Arbitration Award was under Rule 60(b)(6).

concludes there is no basis for granting Plaintiffs' motion to vacate the Stipulated

Arbitration Order under Rule 60(b)(1) and therefore that motion is **DENIED**.

**IV**

For all of the above reasons, the Court **DENIES** Plaintiffs' renewed motion

to vacate (ECF No. 23).

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 22, 2022


I hereby certify that a copy of the foregoing document was served upon the
parties and/or counsel of record on March 22, 2022, by electronic means and/or
ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126